(42 Misc. Rep. 31.)

## NEW YORK BRICK & PAVING CO. v. BRONX BOROUGH BANK OF NEW YORK.

(Supreme Court, Trial Term, Onondaga County.   November, 1903.)

1. CONVERSION—EVIDENCE TO SUSTAIN.

A firm assigned to a brick company, its creditor, accounts against third parties, as collateral security, and they were given by the company to a partner of the firm to collect. He was also made the sales agent of the company in the city where the firm was located, and without express authority from it indorsed in its name checks given in settlement of the accounts, and deposited the checks to his individual account in his local bank, and paid the brick company with checks on such account, and was given a receipt in full by the brick company. *Held*, that such company could not subsequently recover from the bank the value of the checks as having been converted by it by its payment of them on an alleged unauthorized indorsement, it being manifest from the complaint that the brick company had been paid in full and that nobody was injured thereby.

Action by the New York Brick & Paving Company against the Bronx Borough Bank of New York for conversion.   Complaint dismissed.

King, Waters & Page (J. Burnet Nash, of counsel), for plaintiff.

Wm. Nottingham and Henry C. Henderson (J. Rider Cady, of counsel), for defendant.

ROGERS, J.   The plaintiff is a domestic manufacturing corporation, having its principal office at the city of Syracuse, N. Y.   The defendant is a domestic banking corporation organized under the banking law of the state of New York, and having its principal office in the borough of the Bronx, in the city of New York.   On and prior to the 10th day of December, 1897, Frank B. Hall, A. Ames Howlett, and Melvin J. Wheeler, of the city of New York, copartners doing business in the firm name of Hall, Howlett & Wheeler, became and were indebted to the plaintiff in the sum of about $7,000, and that day, as collateral security for the payment of said indebtedness, executed and delivered to the plaintiff an assignment of about 180,000 brick, lying at Washington Bridge Dock, New York City, a promissory note of $500, made by one George Clark, and certain outstanding accounts, amounting to the sum of about $4,700, which accounts were also assigned and transferred by writing indorsed on the back of each at the time of the execution of said instrument.   After the execution by said firm and delivery to the plaintiff of said accounts, they were returned by the plaintiff to the said M. J. Wheeler to be by him collected.   By an instrument in writing dated January 2, 1898, the plaintiff employed the said Wheeler to sell vitrified paving brick, in New York and surrounding cities, at a salary of $125 per month, including office rent and all other expenses, to be allowed as a commission, payable on receipt of payment for goods sold.   Said contract was terminated by the plaintiff January 30, 1899, pursuant to its provisions. Wheeler had desk room in an office at No. 4221 Third avenue, between 177th and 178th streets, New York, and on the building was the sign: "New York Brick and Paving Company.   M. J. Wheeler."   The plaintiff's treasurer and general manager, Mr. James L. Breed, visited

him at said office on the business of the company about once a month during the time of said employment, the visit in February being for about one week. Among the accounts assigned were claims against one Edward J. McLaughlin and the said George Clark. In payment, they gave to said Wheeler the following checks, payable to the order of the plaintiff:

| | |
|---|---|
| E. J. McLaughlin, on Twenty-Third Ward Bank, January 27, 1898.. | $ 125 80 |
| George Clark, on Mt. Morris Bank, March 5, 1898................. | 232 00 |
| George Clark, on Mt. Morris Bank, March 22, 1898................ | 50 00 |
| E. J. McLaughlin, on Twenty-Third Ward Bank, March 25, 1898.... | 176 00 |
| George Clark, on Mt. Morris Bank, March 28, 1898................ | 150 00 |
| George Clark, on Mt. Morris Bank, May 26, 1898.................. | 100 00 |
| George Clark, on Mt. Morris Bank, July 1, 1898.................. | 50 00 |
| George Clark, on Mt. Morris Bank, July 22, 1898................. | 500 00 |
| George Clark, on Mt. Morris Bank, October 21, 1898.............. | 100 00 |
| George Clark, on Mt. Morris Bank, November 16, 1898............. | 100 00 |
| | $1,583 80 |

These checks were indorsed by said Wheeler, "New York Brick and Paving Co. M. J. Wheeler," and deposited by him to his individual credit in the defendant bank, where he kept an open account, except that the check of January 27th was passed to the credit of one John G. Cox. The checks were paid to the defendant in due course by the banks upon which they were drawn. The by-laws of the plaintiff authorized the treasurer to indorse checks for the company. No resolution appears to have been passed by the board of directors authorizing any other person to make such indorsement. Wheeler was not, during the time, an officer of the corporation, nor did he have any express authority to indorse. On the 2d of November, 1898, said Wheeler gave to the plaintiff his check, drawn to its order on said account in the defendant bank, for $2,550. The plaintiff thereupon indorsed said check, and collected the same through the First National Bank of Syracuse. A statement was made and delivered, of which the following is a copy:

"Syracuse, N. Y., Nov. 1, 1898.

"Balance of accounts due, Assign[ed] by H. & H. & Wheeler, to The New York Brick and Paving Co......................................................Dr.

| | |
|---|---|
| Balance, Edward McLaughlin, Acct......................... | $ 700 00 |
| Balance, Rogers & Lynch, Acct............................ | 480 00 |
| Balance, M. Brennan .................................... | 64 00 |
| Balance, George Clark .................................. | 749 00 |
| Balance, M. J. Leahy ................................... | 150 00 |
| Balance, James Riley ................................... | 407 00 |
| "Balance ............................................... | $2,550 00 |

"Received, November 2, 1898, M. J. Wheeler's check for the above accounts, Two Thousand, Five Hundred and Fifty Dollars ($2,550).
"The above is credited to the Hall, Howlett & Wheeler Acct.
"New York Brick and Paving Co.,
"Jas. L. Breed, Treas."

The written part of the bill is apparently in the handwriting of Mr. Breed, though, upon this question, there is no other evidence than that of comparison. It clearly is not in the handwriting of Wheeler. The signature is proven to be that of Mr. Breed. It will be noted that this check was for the "balance of accounts due, assign[ed] by

H. & H. & Wheeler." How or when other payment or payments was or were made does not appear; but in an action in the Supreme Court, brought by the said Frank D. Hall, as "liquidating partner," against this plaintiff, the answer, verified by Mr. Breed June 20, 1899, among other things, alleged that:

"On or about the 10th day of December, 1897, Hall, Howlett & Wheeler was indebted to this defendant in the sum of six thousand eight hundred and eighty-six and $95/100$ ($6,886.95), for goods sold and delivered. On or about that date they assigned, transferred, and set over to the defendant certain accounts and bills receivable, of the face value of five thousand two hundred and two dollars ($5,202), and all the right, title, and interest of the said Hall, Howlett & Wheeler in and to about 180,000 brick, then lying on Washington Bridge Dock, New York City.

"The defendant has realized from said accounts and bills receivable the sum of five thousand two hundred and twelve dollars ($5,212), and from said brick the sum of one thousand six hundred and forty-two and $90/100$ dollars ($1,642.90), and no more. It has given the said Hall, Howlett & Wheeler credit for the sum of thirty-two and $5/100$ dollars ($32.05) due it as commissions, making a total credit of six thousand eight hundred and eighty-six and $95/100$ dollars ($6,886.95)."

The said Hall action went to trial, and judgment was ordered dismissing the complaint, with costs. The roll was filed and judgment docketed in the clerk's office of New York county, April 22, 1903.

The plaintiff produces no evidence explaining or contradicting said receipt or answer. I must therefore find as a fact that all of the assigned accounts and claims were in fact paid by Wheeler to the plaintiff. In doing this, I do not overlook the fact that the receipt bears date November 2, 1898, and that the last check of George Clark was not given until November 16th, following. It may be that Wheeler, assured of his ability to collect, advanced this amount from his own funds. That he did is quite probable. There was nothing improper in this, and I see no reason why he or the bank on which he drew should be prejudiced thereby. At the time of giving the receipt, Wheeler was himself indebted to the plaintiff from $6,000 to $7,000. Before the commencement of this action, plaintiff demanded payment of the defendant the amount of the several checks sued upon, which was refused. Upon these facts, the plaintiff contends that Wheeler was guilty of a forgery in indorsing the checks; that by their collection and deposit to his individual account and subsequent withdrawal on his check, the defendant was guilty of their conversion; and that a recovery be had in this action against the defendant, notwithstanding Wheeler has paid the plaintiff the assigned accounts and claims in full.

That the plaintiff, at the time of the execution and delivery of said receipt and the subsequent service of its answer in the Hall suit, was ignorant of the manner by which Wheeler obtained payment from the several debtors of Hall, Howlett & Wheeler, does not, in my opinion, relieve it from the effect to be given the acceptance of the sums mentioned. They were the proceeds of the assigned claims, and properly received and applied as such. Before suit the facts were known. The assignment was as collateral security for the indebtedness of said firm, and neither Wheeler nor the plaintiff had any right otherwise to apply the money thus obtained. Manifestly, such collections could

not be used to pay Wheeler's individual indebtedness. Why, then, should the defendant, the intermediary through which the money passed to its proper destination, be charged in damages to the extent of being compelled to pay a second time?

It is said that Wheeler had no right to do else with the checks than transmit them to the plaintiff, his principal. He was not heard upon the trial, but there may be found in the circumstances disclosed by the evidence arguments in favor of the proposition that his indorsement was not without, at least, a semblance of authority. He was the authorized collector of the accounts, which originally were debts contracted to his firm. He was the plaintiff's agent, authorized to sell its goods, and on receipt of payment to retain from the sales a commission. On his office was the sign: "New York Brick and Paving Co. M. J. Wheeler." Mr. Breed, the plaintiff's treasurer and general manager, was a monthly caller at his place of business, saw the sign, and met both McLaughlin and Clark, the makers of the checks. Finally, on the 2d of November—and whether there were such before does not appear—Wheeler remitted, and the plaintiff received, his individual check on the defendant bank on account of the collection of assigned claims. This check the plaintiff indorsed and collected in due course of banking business, and it was a notice not to be misunderstood that Wheeler had deposited with the defendant, to his individual credit, the collections made by him, in whatever form they may have been, cash, check, or draft, and that the plaintiff was thus being made the beneficiary of such deposit. But, for the purposes of this action, it may be assumed that the indorsements were unauthorized. It may also be admitted that, when Wheeler received the checks or money for the plaintiff, it was his duty to transmit the specific currency or paper received; that when he made the indorsements on the checks he committed a forgery, and when he deposited them in the defendant bank, to his own credit, he was guilty of a conversion; and it may also be admitted that, when the defendant passed the checks so indorsed to Wheeler's credit, it also was guilty of a conversion. Nevertheless, who has been wronged by the irregularity in transmission? The drawers of the checks make no complaint that there has been a diversion from the purpose intended, or that their checks were paid upon an unauthorized indorsement. The banks on which the checks were drawn seem to be alike content. No harm has, nor, so far as I can discover, can, come to the plaintiff by means of the indorsements and conversion. It has received from the proper source all it was entitled to have. The money thus obtained it now, with full knowledge of all the facts, rightfully retains. What more can it justly ask? It seems to me that there is no reason, in law or in morals, why the plaintiff should again recover the amount which has been paid to it.

The complaint should be dismissed, with costs. Defendant's counsel will prepare and submit proposed findings. If not assented to by plaintiff's counsel, they will be settled on two days' notice.

Complaint dismissed, with costs.   .